# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | |
| ) | **JUDGE RICHARD L. SPEER** |
| Larry/Jean Webb ) | |
| ) | Case No. 10-35453 |
| Debtor(s) ) | |
| ) | |

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3). (Doc. No. 8). The Debtors filed a response, objecting to the dismissal of their case. (Doc. No. 13). A Hearing was then held on the matter. (Doc. No. 17). At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to further consider the evidence and arguments submitted by the Parties. The Court has now had this opportunity. Based upon a review of the applicable information, as well as the entire record of this case, the Court finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has merit.

## FACTS

The Debtors, Larry and Jean Webb, are husband and wife. On August 10, 2010, the Debtors filed a petition in this Court for Relief under Chapter 7 of the United States Bankruptcy Code. At the time they filed their petition for bankruptcy relief, the Debtors did not have any dependents.

In the schedules submitted with their petition, the Debtors disclosed assets of $152,465.00 and liabilities of $262,508.00. The Debtors' primary asset, by far, is their residence which they valued at $149,000.00. The Debtors' remaining assets consist of miscellaneous household items plus a small amount of cash.

In re: Larry and Jean Webb
Case No. 10-35453

      For their liabilities, the Debtors' disclosed secured debts totaling $183,933.00, and unsecured debts totaling $78,575.00. The Debtors' secured debts are comprised of two mortgages: a first mortgage in the amount of $156,471.00, and a second mortgage in the amount $27,462.00. The Debtors set forth that they intended to reaffirm both these obligations. The Debtors' unsecured obligations are in the nature of consumer credit, including a large number of outstanding credit-card obligations.

      Both of the Debtors are presently employed. The Debtor, Mr. Webb, has been with his employer for two years; Mrs. Webb has been with her employer for just under five years. Mr. Webb, however, only recently returned to work, having been laid off his job for approximately one year. The Debtors' sole source of income is derived through their employment.

      From their employment, the Debtors reported $6,999.16 in gross monthly income, or $83,989.92 annually. (Doc. No. 20). Of this amount, $3,499.17 per month was attributable to Mr. Webb's employment, with the remaining $3,499.99 per month derived from Mrs. Webb's employer. After accounting for payroll deductions, the Debtors reported that their combined net monthly income stood at $5,268.57.

      Against their income, the Debtors initially claimed $5,263.62, in necessary, monthly expenses, thus leaving the Debtors a very slight surplus of $4.95 in their monthly household budget. After the United States Trustee brought its Motion to Dismiss, however, the Debtors revised this figure significantly upward, claiming $6,073.12 in necessary, monthly expenditures, thereby leaving their household budget in the negative by $804.55 per month. This revision arose because of three adjustments the Debtors made to their budget.

      First, the Debtors revised their monthly food expenditure downward from $700.00 to $400.00. Conversely, the Debtors also added two monthly expenditures which were not originally

Page 2

In re: Larry and Jean Webb
Case No. 10-35453

itemized in their monthly budget: $674.50 for the lease of an automobile; and $435.00 for the lease of a second automobile. The Debtors' claimed monthly expenses also included the following itemized expenditures:

| | |
|---|---|
| First Mortgage Payment | $1,416.00 |
| Second Mortgage Payment | $ 336.62 |
| Telephone | $ 30.00 |
| Cell Phones | $ 95.00 |
| Dental/Health/Life Ins. | $ 613.00 |
| Charitable Contributions | $ 150.00 |
| Personal Care & Household Cleaning Items | $ 250.00 |
| Pet Care | $ 150.00 |

For the two auto leases, the Debtors set forth in their initial bankruptcy filing that they intended to assume the leases in accordance with 11 U.S.C. § 365(p)(2).

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter final orders in this matter. 28 U.S.C. § 157(b)(1).

Page 3

In re: Larry and Jean Webb
Case No. 10-35453

The Motion of the United States Trustee (hereinafter the "UST") to Dismiss is predicated upon 11 U.S.C. § 707(b)(1) and § 707(b)(3). These provisions operate together, allowing a court to dismiss a debtor's bankruptcy case when the particular circumstances of the filing of the case demonstrate abuse. In relevant part, these provisions provide:

> (b)(1) After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> > (A) whether the debtor filed the petition in bad faith; or
> >
> > (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

Under this statutory framework, it may be said that § 707(b)(1) and § 707(b)(3) operate in a hierarchical fashion, with § 707(b)(1) first setting forth the foundational requirement, providing for the dismissal of case when abuse is found to exist, and § 707(b)(3) then providing a methodology by which to assess the existence of abuse under § 707(b)(1).

Section § 707(b)(3) specifically prescribes two methodologies when assessing whether a case should be dismissed for abuse. First, in accordance with § 707(b)(3)(A), a debtor's case is to be dismissed when the Court finds that the debtor filed their petition in bad faith. Second, under § 707(b)(3)(B), a case is to be dismissed when the totality of the debtor's financial circumstances demonstrate abuse. These two methodologies are set forth in the disjunctive, and thus, a finding of abuse under either will necessitate the dismissal of a debtor's case under § 707(b)(1).

Page 4

**In re: Larry and Jean Webb**
**Case No. 10-35453**

In this matter, the Court is left with the firm conviction that this case should not be allowed to proceed pursuant to the first methodology prescribed in § 707(b)(3). Under § 707(b)(3)(A), a "bad faith filing" is defined as "[t]he act of submitting a bankruptcy petition that is inconsistent with the purposes of the Bankruptcy Code or is an abuse of the bankruptcy system (that is, by not being filed in good faith)." *In re Hornung*, 425 B.R. 242, 248 (Bankr. M.D.N.C. 2010), *citing* BLACK'S LAW DICTIONARY 149 (8th ed. 2004). While bad faith under § 707(b)(3)(A) may involve a dishonest or nefarious act on the part of the debtor, such motivation or intent is not necessary. Rather, for purposes of § 707(b)(3)(A), bad faith may be found to exist when it is determined that the filing of the case is inconsistent with the Bankruptcy Code or its policies thereunder, even though the filing may otherwise be lawful. *In re Hageney*, 422 B.R. 254, 259-60 (Bankr. E.D.Wash. 2009). A confluence of circumstances show this to be the situation before the Court.

First, relying on a previous decision rendered by the Sixth Circuit Court of Appeals,[1] the following consideration was found by this Court to be particularly relevant when conducting a § 707(b)(3)(A) analysis: (1) whether the debtor is using the bankruptcy process to maintain a lifestyle which he or she can ill afford, or whether the debtor has or stands ready to make an adjustment in their lifestyle so as to take advantage of the Code's fresh-start policy. *In re Oot*, 368 B.R. 662 (Bankr. N.D.Ohio 2007). For this purpose, what is troubling for the Court is Mr. Webb's intent to assume an auto lease which costs almost $700.00 per month, an amount which is simply too large to construe as a necessity. This facet of the Debtors' lifestyle choice must also be viewed in conjuncture with the Debtors' intent to assume a second auto lease of $435.00 per month which, while not necessarily extravagant, is not indicative of the Debtors undertaking measures to tighten their financial belt.

---

[1] *Industrial Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124 (6th Cir.1991).

Page 5

In re: Larry and Jean Webb
Case No. 10-35453

The Debtors' choice of vehicles, thus, lends itself to the conclusion that they are using the bankruptcy process to perpetuate a lifestyle that caused them to experience financial difficulties in the first place. This type of situation, standing alone, has been found to warrant a finding of bad faith for purposes of § 707(b)(3)(A).

In a recent decision running parallel to this case, but involving a boat as opposed to an expensive car, the bankruptcy court found bad faith to exist where the debtors were devoting $800.00 per month to pay the debt on their boat, an obligation which they intended to reaffirm in their Chapter 7 bankruptcy. In this situation the court stated, *inter alia*:

> . . . this court finds abuse in the debtors' attempt to use bankruptcy as a means to perpetuate rather than to correct the improvident practices that caused the debtors to default on their financial obligations. The facts of the present case are not complex. At a time when the debtors were solvent, they purchased a boat that they could not afford. For awhile, the [debtors] managed to finance their boating experience by using credit cards to pay ordinary living expenses. Having now determined that they cannot afford both to service their unsecured debt and to remain current on the boat loan, the [debtors] have filed a petition for relief under Chapter 7. In order to keep their boat, however, they propose to reaffirm their obligation to M & T Bank. Essentially, [the debtors] seek to reaffirm an undersecured boat loan, but to otherwise discharge all of their other legitimate debts. Thus, they would perpetuate the cause of their financial problems and perhaps thereby invite the prospect of default on future obligations. Moreover, in pursuing this approach, they implicitly reject a more responsible alternative, namely to surrender the boat and to redirect their boating expenses into a Chapter 13 plan providing for some meaningful repayment of allowed claims.

*In re Boyle*, 412 B.R. 108, 111-12 (Bankr. W.D.N.Y. 2009). This reasoning carries equal weight in this case.

Page 6

10-35453-rls    Doc 20    FILED 12/17/10    ENTERED 12/17/10 16:39:19    Page 6 of 11

In re: Larry and Jean Webb
Case No. 10-35453

The Debtors' financial situation must also be viewed in light of the decision entered by the Sixth Circuit Court of Appeals in *In re Krohn*, 886 F.2d 123 (6th Cir.1989). In this case, the Court found a number of factors to be relevant when assessing a debtor's honesty under § 707(b) – a matter having an obvious overlap with a determination of bad faith. *In re Honkomp*, 416 B.R. 647, 649 (Bankr. N.D.Iowa 2009). Among the factors the Court considered in *In re Krohn* was whether the debtor "was forced into Chapter 7 by unforeseen or catastrophic events." *Id*. at 126. This consideration bends against the Debtors' good faith in seeking Chapter 7 relief.

Based upon the evidence before the Court, nothing indicates that the Debtors were forced into bankruptcy by any unforeseen or catastrophic event, with the evidence instead indicating that the Debtors filed for bankruptcy relief because of the continued accumulation of credit-card obligations and other like debt. This fact is even more troubling given the reason Mr. Webb offered for seeking Chapter 7 relief, as opposed to Chapter 13 relief whereby a portion of his debts would be repaid.

At the Hearing, Mr. Webb, calling attention to his recent heart attack and period of unemployment, testified that he needed to file for relief under Chapter 7 because of simple expediency in that too much time and uncertainty would be involved in seeking to complete a Chapter 13 plan of reorganization. This basis, however, has a hollow ring when it is considered that the Debtors, who do not have any dependents to support, enjoy a meaningful level of income, earning together approximately $84,000.00 per year. The Debtors' basis for seeking Chapter 7 relief also runs contrary to the basic policy of consumer bankruptcy law that bankruptcy should only be used as a last resort and that, if it is used, debtors should, if possible, first attempt repayment under Chapter 13 of the Code. *Tower Loan of Mississippi, Inc. v. Maddox (In re Maddox)*, 15 F.3d 1347, 1353 fn. 34 (5th Cir. 1994), *citing* The House report accompanying the Bankruptcy Reform Act of 1978.

Page 7

10-35453-rls    Doc 20    FILED 12/17/10    ENTERED 12/17/10 16:39:19    Page 7 of 11

In re: Larry and Jean Webb
Case No. 10-35453

To be sure, Mr. Webb has health problems, having recently suffered a heart attack. It is also true that Mr. Webb's may again experience a layoff from his job. There, thus, exists the possibility that the Debtors may have difficulty in completing a Chapter 13 plan of reorganization.

At the same time, Mr. Webb's concerns, at the present, do not pose any impediment to the Debtors at least attempting a Chapter 13 plan of reorganization. To begin with, despite his heart attack, Mr. Webb is currently working, thereby meeting a basic requirement for a Chapter 13 bankruptcy: that he have "regular income." 11 U.S.C. § 109(e). Also, it is not uncommon for a debtor in a Chapter 13 case to be experiencing health or employment issues, and as this Court has observed on past occasions, "Chapter 13 plans of reorganization are sufficiently malleable to handle such contingencies." *In re Jordan*, 428 B.R. 430, 437 (Bankr. N.D.Ohio 2010). For example, in a Chapter 13, a debtor can seek to have a plan modified or the debtor can seek a hardship discharge. 11 U.S.C. § 1328(b); § 1329.

Moving in a different direction, other considerations, involving the Debtors' disclosures with the Court, further lend themselves to a finding of bad faith. First, the Debtors' amendment to their financial figures, whereby they significantly increased their expenses after the UST filed its Motion to Dismiss, must be viewed with suspicion. *In re Beitzel*, 333 B.R. 84, 92 (Bankr. M.D.N.C. 2005) ("Any amendment that a debtor makes to Schedules I and J subsequent to a motion to dismiss under 11 U.S.C. § 707(b) is viewed with inherent suspicion."). In this way, this Court has stressed, in the § 707(b) context, that it "necessarily views with a jaundice eye the changes contained in . . . later amendments when the changes are favorable to the party making the amendment." *In re Smith*, 436 B.R. 476, 481 (Bankr. N.D.Ohio 2010). *See also In re Crink*, 402 B.R. 159, 174 (Bankr. M.D.N.C. 2009) ("Inaccuracies on a debtor's schedules tend to show abuse.").

Yet, even setting aside the initial inaccuracies of the Debtors' financial disclosures, what is even more problematic from the perspective of an analysis under § 707(b)(3)(A) is that the Debtors'

Page 8

In re: Larry and Jean Webb
Case No. 10-35453

financial disclosures are not realistic, and thus do not present a true picture of their financial situation. Specifically, the Debtors claim the impossible: That, *on a forward and ongoing basis*, they are experiencing a shortfall of approximately $800.00 per month in their household budget. In this regard, while temporary shortfalls in a debtor's budget are normal, the Court simply cannot accept that the Debtors are able to consistently maintain, month after month, such a large deficit in their household budget.

As a result, the Court can only conclude that either or both of the following conclusions are true: the Debtors have an additional source of income or the Debtors' claimed expenditures are inflated. Accordingly, as the Debtors' financial figures do not present an accurate and true depiction of their financial situation, a proper assessment of whether the Debtors' case is proper for dismissal under § 707(b)(3)(B), which looks to the totality of the debtor's financial circumstances when assessing abuse, cannot be made.

Yet, because this is true, a strong inference of bad faith arises for purposes of § 707(b)(3)(A). Simply put, the Debtors cannot have it both ways. They cannot claim good faith when applied to §707(b)(3)(A), while at the same time claiming that they have a continuing deficit in their monthly budget – a position meant to mitigate against dismissal under § 707(b)(3)(B)'s totality of the circumstances standard which often considers a debtor's ability to repay their debts.

In conclusion, the burden of proof to support dismissal under § 707(b) is upon the movant, the UST. *In re Baker*, 400 B.R. 594, 597 (Bankr.N.D.Ohio 2009). For those reasons set forth herein, the UST has met this burden, with the preponderance of the evidence showing that the Debtors filed their petition in "bad faith" for purposes of § 707(b)(3)(A). As such, § 707(b)(1) requires that this Court dismiss this case unless the Debtors timely converts their Chapter 7 case.

Page 9

In re: Larry and Jean Webb
Case No. 10-35453

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

***IT IS FURTHER ORDERED*** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Friday, January 7, 2011, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

Dated: December 17, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 10

# **_CERTIFICATE OF SERVICE_**

Copies were mailed this 17th day of December, 2010, to the following parties:

Ericka S Parker
232 10th St
Toledo, OH 43604

Jean A. Webb
958 Jennison Dr.
Rossford, OH 43460

Larry R. Webb
958 Jennison Dr.
Rossford, OH 43460

Owen Dunn, Jr
Law Office of Owen B Dunn Jr
520 Madison Ave., Suite 330
Toledo, OH 43604

Office of the U.S. Trustee
c/o Dean Wyman
201 Superior Ave, E, #441
Cleveland, OH 44114

/s/ Robert C.W. Birmingham
Deputy Clerk, U.S. Bankruptcy Court